# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Alan Burks, Individually, as the Personal Representative of the Estate of Peter Burks, and as the parent and guardian of the minor child, G.B., | : <br> : <br> : <br> : <br> : |
| Alison Burks McRuiz, | : <br> : |
| Sarah Denmark Denson, | : <br> : |
| Zachary Burks, | : <br> : |
| Jackie Merck Hlastan, | : <br> : |
| Timothy Tiffner, Individually, and as the Personal Representative of the Estate of Benjamin David Tiffner, | : <br> : <br> : <br> : |
| Judith Tiffner, | : <br> : |
| Joshua Tiffner, | : <br> : |
| Seth Tiffner, | :     **CLASS ACTION COMPLAINT** <br> : |
| Sarah Crosby, | : <br> : |
| James David Hochstetler, | : <br> : |
| Leanne Lizabeth Hochstetler, Individually, and as the parent and guardian of the minor children P.H. and J.H., | : <br> : <br> : <br> : |
| Kyle Austin Marshall, and | : <br> : |
| Randolph Delbert Nantz, | : <br> : |
| on behalf of themselves and the class of all others similarly situated, | : <br> : <br> : <br> : |
| Plaintiffs, | : <br> : <br> : |
| v. | : |

Islamic Republic of Iran,                              :
Tehran, Iran, and                                       :
                                                        :
Iranian Revolutionary Guard Corps                       :
Armed Forces Headquarters Iran                          :
Tehran - Zone 7 – Shariati                              :
Ghoddoosi Square (Ghaar)                                :
Tehran, Iran,                                           :
                                                        :
                              Defendants.               :
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .:

## CLASS ACTION COMPLAINT FOR DAMAGES

1.     Plaintiffs, by their undersigned counsel, allege upon personal knowledge as to their own acts and upon the investigation conducted by their counsel the following facts:

### NATURE OF THE CASE

2.     Beginning in mid-2005, Defendants the Islamic Republic of Iran and the Iranian Revolutionary Guard Corps began supplying known terrorist groups in Iraq, proxies of Iran known as "Special Groups," with a uniquely lethal weapon that came to be called Explosively Formed Penetrators ("EFPs").   Those Special Groups included, but were not limited to, the Qazali Network, the Hezbollah Brigades, the Shebaini Network, the Promised Day Brigades, and the Badr Corps.   Iran would subsequently provide equipment and education to Special Groups that would enable them to manufacture their own EFPs.   EFPs, among all other forms of improvised or roadside explosive devises, were uniquely capable of cutting through heavy armor plating from a tactically meaningful distance.   As a result, EFPs maimed and killed hundreds of U.S. service members in the years following Iran's introduction of these weapons to Iraq.   Plaintiffs, on behalf of themselves and those similarly situated, bring this action against Iran for damages sustained as a result of the proliferation and use of these weapons throughout Iraq, a direct result of Iran's material support.

2

3.    Plaintiffs bring this class action pursuant to 28 U.S.C. § 1605A of the Foreign Sovereign Immunities Act ("FSIA") for wrongful death, personal injury, and related torts on behalf of a class consisting of all United States nationals, members of the United States armed forces, or employees of the United States Government acting within the scope of their employment, injured or killed by an EFP, and no other form of improvised explosive device, after June 1, 2005, their estates, and immediate family members, with certain exclusions defined in greater detail below.

**THE PARTIES**

A.  **The Plaintiffs**

4.     This action is brought by the Plaintiffs, by and through their counsel, in the individual capacity of each Plaintiff, where appropriate, in the capacity of each as Personal Representative of the estate more particularly described in the caption of this action, and as representatives of the putative class described herein.

5.    Plaintiff Alan Burks, Individually, and as the Personal Representative of the Estate of Peter Burks, is a representative of the putative class described herein.  Alan Burks is a citizen of the United States of America who resides in Texas.  Alan Burks can sue and be sued in this Court.  Alan Burks at all times relevant hereto was and is the father of Peter Burks.  Peter Burks was killed in an Iran-sponsored Explosively Formed Penetrator ("EFP") attack on November 14, 2007.

6.    Plaintiff Jackie Merck Hlastan is a representative of the putative class described herein.  Jackie Merck Hlastan is a citizen of the United States of America who resides in Texas.  Jackie Merck Hlastan can sue and be sued in this Court.  Jackie Merck Hlastan at all times relevant hereto was and is the mother of Peter Burks.

3

7.      Plaintiff G.B. is a representative of the putative class described herein.  G.B. is a citizen of the United States of America who resides in New Jersey.  G.B. can sue and be sued in this Court through her parent and guardian Alan Burks.  G.B. at all times relevant hereto was and is the sister of Peter Burks.

8.      Plaintiff Alison Burks McRuiz is a representative of the putative class described herein.  Alison Burks McRuiz is a citizen of the United States of America who resides in Texas.  Alison Burks McRuiz can sue and be sued in this Court.  Alison Burks McRuiz at all times relevant hereto was and is the sister of Peter Burks.

9.      Plaintiff Sarah Denmark Denson is a representative of the putative class described herein.  Sarah Denmark Denson is a citizen of the United States of America who resides in Texas.  Sarah Denmark Denson can sue and be sued in this Court.  Sarah Denmark Denson at all times relevant hereto was and is the sister of Peter Burks.

10.     Plaintiff Zachary Burks is a representative of the putative class described herein.  Zachary Burks is a citizen of the United States of America who resides in Alabama.  Zachary Burks can sue and be sued in this Court.  Zachary Burks at all times relevant hereto was and is the brother of Peter Burks.

11.     Plaintiff Timothy Tiffner, Individually, and as the Personal Representative of the Estate of Benjamin David Tiffner, is a representative of the putative class described herein.  Timothy Tiffner is a citizen of the United States of America who resides in Tennessee.  Timothy Tiffner can sue and be sued in this Court.  Timothy Tiffner at all times relevant hereto was and is the father of Benjamin David Tiffner.  Benjamin David Tiffner was killed in an Iran-sponsored Explosively Formed Penetrator ("EFP") attack on November 7, 2007.

12.     Plaintiff Judith Tiffner is a representative of the putative class described herein. Judith Tiffner is a citizen of the United States of America who resides in Tennessee.  Judith Tiffner can sue and be sued in this Court.  Judith Tiffner at all times relevant hereto was and is the mother of Benjamin David Tiffner.

13.     Plaintiff Joshua Tiffner is a representative of the putative class described herein. Joshua Tiffner is a citizen of the United States of America who resides in Utah.  Joshua Tiffner can sue and be sued in this Court.  Joshua Tiffner at all times relevant hereto was and is the brother of Benjamin David Tiffner.

14.     Plaintiff Seth Tiffner is a representative of the putative class described herein.  Seth Tiffner is a citizen of the United States of America who resides in Alabama.  Seth Tiffner can sue and be sued in this Court.  Seth Tiffner at all times relevant hereto was and is the brother of Benjamin David Tiffner.

15.     Plaintiff Sarah Crosby is a representative of the putative class described herein. Sarah Crosby is a citizen of the United States of America who resides in Alaska.  Sarah Crosby can sue and be sued in this Court.  Sarah Crosby at all times relevant hereto was and is the sister of Benjamin David Tiffner.

16.     Plaintiff James David Hochstetler is a representative of the putative class described herein.  James David Hochstetler is a citizen of the United States of America who resides in Tennessee.  James David Hochstetler can sue and be sued in this Court.  James David Hochstetler suffered serious injuries, including severe injury to his hand and face in an Iran-sponsored EFP attack on August 23, 2007.

17.     Leanne Lizabeth Hochstetler is a representative of the putative class described herein.  Leanne Lizabeth Hochstetler is a citizen of the United States of America who resides in

Tennessee.  Leanne Lizabeth Hochstetler can sue and be sued in this Court.  Leanne Lizabeth Hochstetler at all times relevant hereto was the wife of James David Hochstetler.

18.     J.H. is a representative of the putative class described herein.  J.H. is a citizen of the United States of America who resides in Tennessee.  J.H. can sue and be sued in this Court through his parent and guardian Leanne Lizabeth Hochstetler.  J.H. at all times relevant hereto was and is the son of James David Hochstetler.

19.     P.H. is a representative of the putative class described herein.  P.H. is a citizen of the United States of America who resides in Tennessee.  P.H. can sue and be sued in this Court through her parent and guardian Leanne Lizabeth Hochstetler.  P.H. is the daughter of James David Hochstetler born after the attack that wounded him.

20.     Kyle Austin Marshall is a representative of the putative class described herein.  Kyle Austin Marshall is a citizen of the United States of America who resides in Tennessee.  Kyle Austin Marshall can sue and be sued in this Court.  Kyle Austin Marshall at all times relevant hereto was and is the son of James David Hochstetler.

21.     Plaintiff Randolph Delbert Nantz is a representative of the putative class described herein.  James Randolph Delbert Nantz is a citizen of the United States of America who resides in Texas. Randolph Delbert Nantz can sue and be sued in this Court.  Randolph Delbert Nantz suffered severe injuries, including nerve damage, burns on 23% of his body, and the amputation of his left leg below the knee in an Iran-sponsored EFP attack on August 23, 2007.

### B.  The Defendants

22.     Defendant Islamic Republic of Iran ("Iran") is a foreign state that was designated as a State Sponsor of Terrorism on January 19, 1984 pursuant to section 6 of the Export Administration Act of 1979, 50 U.S.C. § 4605(j), section 620A of the Foreign Assistance Act of

1961, 22 U.S.C. § 2371, and section 40 of the Arms Export Control Act, 22 U.S.C. § 2780. Iran

has remained so designated continuously ever since. According to an April 30, 2009 U.S.

Department of State Report on State Sponsors of Terrorism (the "2009 State Department Report"):

> Despite its pledge to support the stabilization of Iraq, Iranian authorities continued to provide lethal support, including weapons, training, funding, and guidance, to Iraqi militant groups that targeted Coalition and Iraqi forces and killed innocent Iraqi civilians.[1]

23.    In an April 2008 "Report to Congress on the Situation in Iraq," the U.S. Commander

of the Coalition Forces in Iraq echoed this sentiment noting that "Iran has fueled the violence [in

Iraq] in a particularly damaging way, through its lethal support to the Special Groups."[2]

24.    Defendant Iranian Revolutionary Guard Corps, also known as the Islamic

Revolutionary Guard Corps (the "IRGC"), was founded in the aftermath of the 1979 Islamic

Revolution as a military organization charged with safeguarding and protecting the ruling men of

the Islamic Republic of Iran against internal and external challenges and threats.  It is a military

branch of the Iranian government and therefore is considered "the state itself."   The U.S.

Government has described defendant IRGC as being "composed of five branches (Ground Forces,

Air Force, Navy, Basij militia, and Qods [sic] Force special operations) in addition to a

counterintelligence directorate and representatives of the Supreme Leader" of Iran.[3]  According to

the 2008 State Department Report, the IRGC and its leaders "were directly involved in the planning

---

[1] U.S. DEP'T OF STATE, OFFICE OF THE COORDINATOR FOR COUNTERTERRORISM, COUNTRY REPORTS ON TERRORISM 2008, 183 (Apr. 2009).
[2] General David H. Petraeus, COMMANDER, MULTINATIONAL FORCE-IRAQ, REPORT TO CONGRESS ON THE SITUATION IN IRAQ, 2 (Apr. 8, 2008),
http://iraq.usembassy.gov/uploads/3m/Gl/3mGlIE3hK_bMMKoly4AKAQ/petraeus-testimony-8-april-2008.pdf.
[3] U.S. Treasury Dep't Press Release hp-644, *Designation of Iranian Entities and Individuals for Proliferation Activities and Support for Terrorism* (Oct. 25, 2007) (the "2007 U.S. Treasury Department Press Release"), http://www.treasury.gov/press-center/press-releases/Pages/hp644.aspx.

and support of terrorist acts throughout the region and continued to support a variety of groups in their use of terrorism to advance their common regional goals."[4]

25.    The IRGC relies on its Quds Force, a specialized branch, to further Iran's political goals directly and indirectly through the use of terror and various foreign groups as proxies.  On October 25, 2007, the U.S. Treasury Department officially designated the IRGC-Quds Force as a material supporter of terrorism pursuant to Executive Order 13224.   In connection with that designation, the Treasury Department noted that Quds Force "provides lethal support in the form of weapons, training, funding, and guidance to select groups of Iraqi Shi'a militants who target and kill Coalition and Iraqi forces and innocent Iraqi civilians" in Iraq.[5] The 2008 State Department Report observed that in 2007 the IRGC-Quds Force:

> continued to provide Iraqi militants with Iranian-produced advanced rockets, sniper rifles, automatic weapons, mortars that have killed thousands of Coalition and Iraqi Forces, and explosively formed projectiles [sic] (EFPs) that have a higher lethality rate than other types of improvised explosive devices (IEDs), and are specially designed to defeat armored vehicles used by Coalition Forces.[6]

26.    None of these designations of Iran or the IRCG are affected by the Joint Comprehensive Plan of Action entered into on July 14, 2015 between, among others, the United States and Iran, which lifted certain sanctions against Iran.

**JURISDICTION AND VENUE**

27.    Jurisdiction over the subject matter of this case arises under 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2), and 1605A, which create subject-matter and personal jurisdiction for civil actions for wrongful death and personal injury against State Sponsors of Terrorism and their officials, employees and agents.

---

[4] U.S. DEP'T OF STATE, OFFICE OF THE COORDINATOR FOR COUNTERTERRORISM, COUNTRY REPORTS ON TERRORISM 2007, 183 (Apr. 2008) (the "2008 State Department Report").
[5] 2007 U.S. Treasury Department 2007 Press Release.
[6] 2008 State Department Report at 173.

28.    Pursuant to the FSIA and related statutes, Defendants Iran and IRGC are subject to suit in the courts of the United States as sponsors of EFP attacks against U.S. citizens and U.S. armed forces service members.

29.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4), which provides, in pertinent part, that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

30.    28 U.S.C. § 1605A(c) provides a federal private right of action against a foreign state that is or was a State Sponsor of Terrorism, and also against any official, employee or agent of that foreign state while acting within the scope of his or her office, employment or agency, for wrongful death, personal injury and related torts caused by an act of torture or extrajudicial killing or the provision of material support and resources for such acts.

## FACTUAL ALLEGATIONS

31.    Throughout the Class Period, Defendants financed, manufactured, supplied and designed the EFPs used against Plaintiffs in Iraq.  EFPs contain precision-manufactured components that—without the material support of Defendants—could not have been acquired or built by the groups of terrorists who used them to murder and injure Plaintiffs.  As set forth in greater detail below, Defendants (a) provided EFPs and their component parts to the Special Groups in Iraq; (b) trained those Special Groups to use the EFPs against Plaintiffs in Iraq; and (c) built up the capacity of those Special Groups as Defendants' proxy to create a domestic EFP manufacturing capacity in Iraq.

32.    EFPs consist of a steel tube welded closed on one end, packed with plastic explosives and a detonator, then capped with a precision-manufactured, inverted copper cone. When detonated, the explosives liquefy the copper cone and project it out of the tube.  That slug

of molten copper is capable of penetrating the steel plating of many U.S. armored vehicles, creating steel spall, or fragments, that along with the copper slug wreak havoc on the interior of vehicles, dismembering and killing its occupants.  EFPs are deployed singly or in arrays.

33.     Because they project a hypersonic slug of copper, EFPs produce a characteristic hole (or holes) in armor plating that is distinct from the damage inflicted by other and typical Improvised Explosive Devices ("IEDs").

34.     According to Col. Barry Schoop, Chief Scientist for the Joint Improvised Explosive Device Defeat Organization ("JIEDDO"), currently known as the Joint Improvised-Threat Defeat Agency ("JIDA"), EFPs make up only 2% of all improvised explosive devices deployed against Coalition forces in Iraq, but account for a "very large percentage" of casualties from such attacks.[7]

35.     The copper cone of an EFP must be lathed into a specific and precise parabolic arc, or the detonation will result in a relatively less harmful, diffuse spray of copper.  Though simple in design, EFPs' armor penetration capabilities depend on precision machining.  If the parabola of the copper cone is too "sharp" it will produce a stream rather than a slug, that while deadly at close range, dissipates its energy over the course of a few feet.  If the parabola is too flat, the copper will fragment into an expanding arc that is ineffective at piercing armor plate.  According to Joint Task Force Troy, a multinational task force operating in Iraq responsible for analyzing evidence retrieved by explosive ordinance disposal teams, the need for "very precise machining" in the manufacturing of EFPs means that they are not something "someone can produce in a garage."  As an official for the unit explained, "When [explosive ordnance disposal] teams go out and they respond to an explosive event, they collect whatever evidence they find and bring it back . . . . We take that evidence and take it apart and exploit it."  Using forensic tools, Task Force Troy can "put

[7] BROOKINGS INST., IRAQ INDEX: TRACKING VARIABLES OF RECONSTRUCTION & SECURITY IN POST-SADDAM IRAQ 31 (Oct. 1, 2007), http://www.brookings.edu/fp/saban/iraq/index.pdf.

all those puzzles together, and . . . determine where they [the EFPs] are from." Based on that analysis, "the forensic teams can categorically state that the weapons are from Iran"[8] and thus supplied by Defendants.

36.     Coalition forces in Iraq first began encountering EFPs, as distinct from more primitive IEDs, in June-July 2005. Over the next three years EFPs would kill hundreds of U.S. soldiers and maim hundreds more.

37.     During a Senate Armed Services Committee hearing, former Chairman of the Joint Chiefs of Staff, Gen. Martin E. Dempsey, described the functioning of an EFP as follows: "a copper cone is melted at super-high temperatures and projected, and essentially burns its way through armor plate." Gen. Dempsey then confirmed that "several hundred" U.S. troops had been killed by EFPs and that Iran, the Quds Force, and General Qasem Soleimani, commander of the Quds Force, were the "main suppliers of these Explosively Formed Penetrators."[9]

38.     In a press interview, Gen. Stanley McChrystal (ret.) stated, "There was zero question where they [the EFPs] were coming from . . . . We knew where all the factories were in Iran. The E.F.P.s killed hundreds of Americans."[10]

39.     Iranian agents, and Iranian proxy paramilitaries operating in Iraq, known as "Special Groups," smuggle EFP components into Iraq from Iran for use against U.S. armed forces. In 2007, Coalition forces captured a Special Groups operative responsible for smuggling EFP components into Iraq with direct ties to the IRGC Quds Force. Regarding that arrest, Lt. Col. Christopher Garver commented that "Coalition troops continue to target terrorists who bring

---

[8] U.S. Dep't of Defense News Article, *Extremists Use Iranian Weapons, Iraq Command Spokesman Says* (July 11, 2011), http://archive.defense.gov/news/newsarticle.aspx?id=64630.
[9] Video: Senate Armed Services Committee Hearing on the Iran Nuclear Agreement, C-SPAN (July 29, 2015), http://www.c-span.org/video/?327380-1/hearing-iran-nuclear-agreement.
[10] Dexter Filkins, *The Shadow Commander*, THE NEW YORKER , Sept. 30, 2013, http://www.newyorker.com/magazine/2013/09/30/the-shadow-commander.

weapons and explosives, especially explosively formed penetrators, and other aid into Iraq," and that "Coalition forces will continue their focused operations against unhelpful Iranian influence interfering in Iraq."[11]

40.     Iran trained proxy Special Group members on Iranian soil in the use of EFPs, among other weapons systems.

41.     In addition, Iran built up the capacity of its proxy Special Groups to create a domestic EFP manufacturing capacity in Iraq.  Raids against the Iran-supported Mahdi Army in Sadr City discovered several EFP "factories" with the machinery necessary to create copper EFP cones, as well as dozens of such cones, among other EFP components.  In the offensive that pushed back the Mahdi Army and revealed these factories, over one hundred Iran-backed Special Group members were detained or killed, and 19 Hezbollah (the notorious Lebanese terrorist group and proxy of Iran) operatives were also detained.[12]

42.     According to the Iraq Index, a collection of publicly available data regarding violence in Iraq collected by the Brookings Institution, there were 62 reported EFP attacks in December 2006, 65 in April 2007, approximately 60 in May 2007, 99 in July 2007, 78 in August 2007, 52 in September 2007, 53 in October 2007, less than 40 in November 2007, less than 20 in July 2008, and 12 in November 2008.[13]  Given the lethality of EFPs and the number of months for which EFP data was unavailable to Brookings, it is conservative to estimate that hundreds of U.S. service members have been killed or injured by Iranian supplied EFPs in Iraq.

---

[11] U.S. Dep't of Defense News Article, *Coalition Forces Capture High-Priority Weapons Smuggler, 62 Others* (Aug. 16, 2007), http://archive.defense.gov/news/newsarticle.aspx?id=47065.
[12] Bill Roggio, *Iraqi Troops Find EFP Factory in Sadr City*, THE LONG WAR JOURNAL (Oct. 30, 2008), http://www.longwarjournal.org/archives/2008/10/iraqi_troops_find_ef.php.
[13] BROOKINGS INST., IRAQ INDEX: TRACKING VARIABLES OF RECONSTRUCTION & SECURITY IN POST-SADDAM IRAQ (Feb. 26, 2009), http://www.brookings.edu/~/media/Centers/saban/iraq-index/index20090226.PDF

43.     On November 14, 2007, the U.S. military convoy containing Second Lieutenant Peter Burks' vehicle was struck by an array of six to eight EFPs just prior to turning in to a Green Zone checkpoint in Baghdad, Iraq across from the Ministry of Public Affairs.   After the EFPs struck Lieutenant Burk's vehicle, rescuers removed an unresponsive Lieutenant Burks, who was not breathing, and was bleeding from his ears, nose, mouth and head.   He was pronounced dead 20 minutes after the attack.

44.     On November 7, 2007, Captain Benjamin David Tiffner was fatally wounded by an EFP while part of a ground convoy in Baghdad, Iraq.   Several other members of the convoy were injured in the attack that killed Captain Tiffner, though no others were fatally wounded.

45.     August 23, 2007 Captain James David Hochstetler was riding in a vehicle struck by an array of at least three remotely-triggered EFPs.   The attack, which occurred as U.S. soldiers returned from a town hall meeting with the Mayor of Al Aziziyah, Iraq, killed two of Hochstetler's colleagues.   Shrapnel from one of the EFPs cut off Captain Hochstetler's nose.   In addition, Captain Hochstetler sustained trauma to the left side of his face, his left eye, his right hand, and his forearm. He also suffered a traumatic brain injury that has caused chronic migraines, among other lasting effects, including a much greater risk of degenerative brain disease.

46.     On December 22, 2006 Sergeant First Class Randolph Delbert Nantz was riding in a Humvee in a three vehicle convoy in the Baghdad Al Jadida neighborhood of Baghdad, Iraq. The convoy had just pulled into a side residential street when the vehicle was struck by an explosively formed penetrator device.   The round entered the vehicle near the right rear wheel. Sergeant Nantz was sitting in the back right seat and was struck in the backside. The EFP's slug of molten copper, particles of which were removed from Sergeant Nantz's body during surgery,

tore through his buttocks as it went by.  Sergeant Nantz's injuries include third degree burns over 22% of his body, large muscle tissue loss and severe nerve damage, and the amputation of his left leg below the knee.

## CLASS ALLEGATIONS

47.     Plaintiffs adopt by reference all allegations contained in the paragraphs above, as if fully set forth herein.

48.     Plaintiffs bring this action on behalf of themselves and all other similarly-situated individuals pursuant to Fed. R. Civ. P. 23.

49.     The Class consists of the following: All United States nationals, members of the United States armed forces, or employees of the United States Government who, while acting within the scope of their employment, were injured or killed by an EFP, and by no other form of improvised explosive device at any time on or after June 1, 2005 through the date of the filing of this complaint (the "Class Period"), and their immediate family members as defined by the law of this Circuit, but excluding any such person(s) who has already individually retained counsel to bring the claims set forth herein.

### Numerosity

50.     The Class consists of thousands of individuals located throughout the United States. The Class Members are so numerous that joinder of individual members in this action is impracticable.

**Commonality**

51.     There are common questions of law and/or fact in this action that relate to and affect

the rights of each member of the Class and the relief sought.  These include:

a.      Whether the conduct of Defendants satisfies the requirements of 28 U.S.C. § 1605A

of the FSIA;

b.      Whether Defendants participated in the common course of conduct complained of

herein;

c.      Whether Defendants materially supported Special Groups in Iraq by supplying

them with EFPs, EFP components, and EFP manufacturing equipment and expertise;

d.      Whether Special Groups in Iraq deployed EFPs with the material support of

Defendants;

e.      Whether EFPs deployed against Class Members contained components supplied by

Iran, or were manufactured or deployed with the material support of Iran;

f.      Whether EFP attacks produce unique characteristic injuries and vehicular damage

identifiable by experts;

g.      Whether Plaintiffs were injured or killed by EFPs;

h.      Whether Defendants may be held liable for the injuries to Plaintiffs and the Class;

i.      Whether Defendants may be held liable for the deaths of those Plaintiffs and

members of the class who died as a result of incidents involving EFPs used against

Americans serving in Iraq;

j.      Whether this Court has jurisdiction under 28 U.S.C. § 1605A over the claims of

active-duty U.S. service members and supporting forces killed or injured by weapons

systems deployed or manufactured by a known terrorist group with the material support of

a State Sponsor of Terrorism (Defendants) or supplied by a State Sponsor of Terrorism (Defendants), and the immediate family members of those so killed or injured.

### Typicality

52.     The claims of all Plaintiffs are typical of the claims of the Class, in that all claims of Class Members depend on a showing of Defendants' common course of misconduct upon which liability is based and all Plaintiffs and the Class suffered injuries as a result of the same misconduct, as alleged herein.

### Adequacy of Representation

53.     Plaintiffs are all members of the Class as defined above.  They will fairly and adequately protect the interest of the Class because it is in their best interest to prosecute the claims alleged herein to obtain compensation for Defendants' conduct.  Plaintiffs have no interest which conflicts with those of the Class Members because one or more questions of law and/or fact regarding Defendant's liability are common to all Class Members, such that by prevailing on their own claims, Plaintiff necessarily will establish Defendants' liability to other Class Members.

54.     Plaintiffs have retained counsel who are experienced in litigating claims against State Sponsors of Terrorism under 28 U.S.C. § 1605A and in the prosecution of class actions. Counsel for Plaintiffs have litigated large, complex claims involving thousands of military family members and can be expected to handle this matter in an expeditious and economical matter in the best interests of the Class.

### Fed. R. Civ. P. 23(b)(1)(A)

55.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(1)(A). Separate litigations by individual Class Members against Defendants would create the risk of conflicting, inconsistent or otherwise varying rulings and resolutions concerning those

individual Class Members that would create conflicting or otherwise incompatible standards of conduct for Defendants.

## **Fed. R. Civ. P. 23(b)(1)(B)**

56.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(1)(B).  Separate litigations by individual Class Members against Defendants would create the risk of adjudications concerning the claims of individual Class Members that, as a practical matter, would be dispositive, through preclusion, law of the case, or other doctrines, of the interests of other Class Members not parties to the individual adjudications, or would otherwise substantially impair or impede their ability to protect their own interests.

## **CLAIMS FOR RELIEF**

## **FIRST CLAIM FOR RELIEF**

**AGAINST DEFENDANTS UNDER 28 U.S.C. § 1605A(c) INDIVIDUALLY AND ON BEHALF OF ALL CLASS MEMBERS WHO SURVIVED AN ACT OF INTERNATIONAL TERRORISM AND EXTRAJUDICIAL KILLING CARRIED OUT WITH THE MATERIAL SUPPORT OF DEFENDANTS**

57.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

58.     Class Members, including Plaintiffs James David Hochstetler, and Randolph Delbert Nance, were injured by Defendants' provision of material support to Special Groups in Iraq, in the form of EFPs, EFP components, and training in the construction and deployment of EFPs, in that EFPs provided by, or constructed or deployed with the material support of Defendants, were deployed against them in Iraq.

59.     As a direct and proximate result of the willful, wrongful, and intentional acts of the Defendants and their agents, Plaintiffs and Class Members endured severe physical injuries, extreme mental anguish, pain and suffering, loss of solatium, and economic loss.

60.     Under 28 U.S.C. § 1605A(c), Plaintiffs' damages, include, but are not limited to, compensatory damages for their severe physical injuries, extreme mental anguish, pain and suffering, loss of solatium, and any economic losses, as well as punitive damages for Defendants' outrageous, willful, and malicious, conduct.

## SECOND CLAIM FOR RELIEF

**AGAINST DEFENDANTS UNDER 28 U.S.C. § 1605A(c) INDIVIDUALLY AND ON BEHALF OF ALL CLASS MEMBERS KILLED IN AN ACT OF INTERNATIONAL TERRORISM AND EXTRAJUDICIAL KILLING CARRIED OUT WITH THE MATERIAL SUPPORT OF DEFENDANTS**

61.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

62.     Class Members, including Plaintiffs the estate of Benjamin David Tiffner and the estate of Peter Burks, were injured by Defendants' provision of material support to Special Groups in Iraq, in the form of EFPs, EFP components, and training in the construction and deployment of EFPs, in that EFPs provided by, or constructed or deployed with the material support of Defendants, were deployed against them in Iraq.

63.     As a direct and proximate result of the willful, wrongful, and intentional acts of the Defendants and their agents, Plaintiffs and Class Members were killed and endured extreme mental anguish, pain and suffering, and economic loss.

64.     Under 28 U.S.C. § 1605A(c), Plaintiffs' damages, include, but are not limited to, compensatory damages for their wrongful deaths, extreme mental anguish, pain and suffering, and any economic losses, as well as punitive damages for Defendants' outrageous, willful, and malicious, conduct.

## THIRD CLAIM FOR RELIEF

**AGAINST DEFENDANTS UNDER 28 U.S.C. § 1605A(c) INDIVIDUALLY AND ON BEHALF OF ALL CLASS MEMBERS WHO WERE IMMEDIATE FAMILY MEMBERS OF THOSE KILLED OR INJURED IN AN ACT OF INTERNATIONAL TERRORISM AND EXTRAJUDICIAL KILLING CARRIED OUT WITH THE MATERIAL SUPPORT OF DEFENDANTS FOR LOSS OF SOLATIUM AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

65.     Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

66.     Class Members, including Plaintiffs Alan Burks, Alison Burks McRuiz, Sarah Denmark Denson, Zachary Burks, G.B., Jackie Merck Hlastan, Timothy Tiffner, Judith Tiffner, Joshua Tiffner, Seth Tiffner, Sarah Crosby, Leanne Lizabeth Hochstetler, J.H., P.H., and Kyle Austin Marshall were injured by Defendants' provision of material support to Special Groups in Iraq, in the form of EFPs, EFP components, and training in the construction and deployment of EFPs, in that EFPs provided by, or constructed or deployed with the material support of Defendants were deployed against their immediate family members in Iraq.

67.     As a direct and proximate result of the willful, wrongful, and intentional acts of the Defendants and their agents, Plaintiffs and Class Members suffered severe emotional distress, extreme mental anguish, including physical manifestations, as well as loss of solatium.

68.     Under 28 U.S.C. § 1605A(c), Plaintiffs' damages, include, but are not limited to, compensatory damages for their extreme mental anguish, pain and suffering, and loss of solatium, as well as punitive damages for Defendants' outrageous, willful, and malicious, conduct.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand:

a.    Plaintiffs request that after due proceedings this action be certified as a class action, as alleged above, for the purpose of determining the common issues of liability for appropriate damages;

b.    Judgment for all Plaintiffs and the Class against Defendants for compensatory damages, including, but not limited to, physical injury, extreme mental anguish, pain and suffering, economic losses, and loss of solatium, in amounts to be determined at trial;

c.    Judgment for all Plaintiff estates and the estates of all Class Members against Defendants for compensatory damages for wrongful death, including, but not limited to, physical injury, extreme mental anguish, pain and suffering, economic losses, and any pecuniary loss (or loss of income to the estates) in amounts to be determined at trial;

d.    Judgment for all Plaintiffs and the Class against Defendants for punitive damages in an amount to be determined at trial;

e.    Plaintiffs' and the Class's costs and expenses;

f.    Plaintiffs' and the Class's attorney's fees;

g.    Plaintiffs request leave of Court to amend this Complaint as the interests of justice require; and

h.    Such other and further relief as the Court finds just and equitable.

DATED                          Respectfully Submitted,

June 13, 2016                      **/s/Steven R. Perles**

                               Steven R. Perles (D.C. Bar No. 326975)
                               Edward B. MacAllister (D.C. Bar No. 494558)
                               Joshua K Perles (D.C. Bar No. 1031069)
                               PERLES LAW FIRM, PC
                               1050 Connecticut Ave., NW Suite 500
                               Washington, DC 20036
                               Tel: (202) 955-9055

                               James P. Bonner
                               Patrick L. Rocco
                               STONE BONNER & ROCCO LLP
                               447 Springfield Avenue, 2nd Fl.
                               Summit, NJ  07901
                               Tel: (908) 516-2045

                               *Attorney for Plaintiffs*