**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALAN BURKS, *et al.*,             )<br><br>           Plaintiffs,     )<br><br>v.            )<br><br>ISLAMIC REPUBLIC OF IRAN, *et al.*,     )<br><br>           Defendants.     ) | CIVIL ACTION NO.: 16-cv-1102 (CRC) |

**PLAINTIFFS' REPLY TO DEPARTMENT OF DEFENSE**
**OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs have shown a substantial need for information the Government has withheld in the heavily redacted reports linking the deadly EFP attacks on Plaintiffs 2nd Lieutenant Burks and Captain Tiffner to Iran or to an Iranian proxy. The Government does not dispute Plaintiffs' compelling need for that information, nor has it provided any basis to support a finding that disclosure of that limited information would jeopardize national security. *See* May 29, 2020 Reply Declaration of Ret. General Michael Oates ("Oates Reply Decl.") at ¶¶ 6-11 (attached hereto as Exhibit A).

Instead, Secretary of Defense Dr. Mark T. Esper now invokes military and state secrets privilege to prevent "serious damage to the national security of the United States" through the release of the following five forms of information, none of which pertain to Plaintiffs' key requests:

1. Intelligence Sources—**identifying** information regarding **human intelligence sources** and "geospatial intelligence resources"; and

2. Analysis of Terrorist Networks and Perpetrators of Attacks—"references to **individuals** assessed to be members of explosively formed penetrator ("EFP") networks operating in the

Middle East and their roles in those networks"; and

3. Intelligence Gaps—"**specific** unanswered questions regarding information" and "actions taken by U.S. combat forces to satisfy these gaps via intelligence collection methods"; and

4. Enemy Tactics, Techniques, and Procedures ("TTPs") and Countermeasures—" **physical locations** where EFPs may be stored, **when and where** the EFPs are transferred to individuals, **how** devices are detonated, **how** enemy forces determine when to detonate devices, **how** information is relayed between members of the cell, and related topics"; and

5. EFP Efficacy and Damage Assessments of Vehicles— "assessments of the efficacy of **specific devices** used by enemy forces" and "**photographs** of damaged vehicles and other assessments of the effects of EFPs in specific attacks."

Esper Decl., ECF No. 45-2 (emphasis added).

Secretary Esper's enumeration, and indeed his entire invocation of privilege, is directed towards a straw man. *For over fifteen months,* Plaintiffs have made clear to the Government that they do not seek any of the "sources and methods" materials, including the identification of individual human intelligence sources, described by Secretary Esper, but rather merely seek attribution of the three listed attacks to either Iran or a specific Iranian proxy group. Nowhere in Secretary Esper's declaration does he assert that disclosure of this limited attribution information would jeopardize national security. Indeed, to do so would lack all credibility. *See infra* Section I.

When counsel for Plaintiffs' contacted the DTRA General Counsel's office on January 15, 2019, Plaintiffs made clear that they did not seek any of the sources and methods materials that Secretary Esper has identified. Perles Decl. of March 5, 2019 at ¶¶7-12, ECF No. 31-2. During that discussion, the General Counsel's office refused Plaintiffs' various proposals to separate the properly classified sources and methods information from the Government's conclusions regarding attack attributions Plaintiffs seek, including *in camera* review, and the production at Plaintiffs'

expense of an unclassified summary by a third party with appropriate security clearance. *Id*. Counsel for Plaintiffs repeated those proposals to Department of Justice attorneys during the many meet and confer sessions following the filing of Plaintiffs' motion. Perles Decl. of January 24, 2020 at ¶¶14-19, ECF No. 43-1. Specifically, counsel for Plaintiffs proposed that:

(1) "DTRA designate a witness [to] testify as to **whether Iran was implicated in those attacks, without disclosing the details** in the various redacted reports that DTRA claims would jeopardize national security"; or

(2) That the former heads of JIEDDO and TEDAC, both of whom are willing, produce an unclassified report to the same effect; or

(3) That this Court conduct an *in camera* review to determine whether the same information could be distilled from the reports without jeopardizing national security.

*Id.* (emphasis added). The Government refused all three proposals. *Id*. On December 20, 2019, four months before Secretary Esper signed his Declaration, Plaintiffs stated in writing that they would forgo their renewed motion to compel if, "in lieu of further disclosures of presently redacted information, DOD [Department of Defense] will produce a witness . . . who would simply testify that the government concluded that the EFP attacks of November 7, 2007 and November 14, 2007 . . . were attributable to Iran or to groups known to be sponsored by Iran." E-mail from Patrick L. Rocco, counsel for Plaintiffs, to Vinita B. Andrapalliyal, Trial Attorney, United States Department of Justice Civil Division (Dec. 20, 2019, 02:37 EST) (attached hereto as Exhibit B).

DOD produced an un-redacted portion of a SIGACT report attributing the August 23, 2007 EFP attack on Plaintiff Captain Hochstetler's convoy to the "Abd-Al-Sadahs Cell [which] works with Iranian Insurgents" and "has ties to Iran and uses Iranian made explosively formed penetrators." Mot. at 11-12. This two-sentence conclusion, which contains none of the types of sources and methods materials covered by Secretary Esper's invocation of privilege, was sufficient to provide

the critical evidence Plaintiffs need to prove Captain Hochstetler's claims against Iran. *Id*. As a result of this disclosure, well before Secretary Esper signed his declaration, Plaintiffs stated in their renewed motion that they would not pursue additional disclosures regarding that attack and instead focus their efforts on eliciting information of the same level of generality regarding the November 7, 2007 attack in which Captain Benjamin Tiffner was killed, and the November 14, 2007 attack which killed 2nd Lieutenant Peter Burks. *See Id*.

I.   **The Government Has Failed Entirely to Sustain Its Burden to Show that Disclosing Information About the Nation, Group or Sect Responsible for the Fatal November 7 and 14, 2007 Attacks on Plaintiffs Would Jeopardize National Security.**

The Government does not dispute that under Rule 45 it has the burden of presenting sufficient facts to establish the privilege as to all of the information being withheld. Mot. at 18. (citing *Duran v. Andrew*, No. 09-730 (HHK/AK), 2010 WL 1418344, at \*2 (D.D.C. Apr. 5, 2010); *Nat'l Sec. Counselors v. C.I.A*., 960 F. Supp. 2d 101, 132 (D.D.C. 2013)). Two case cited by the Government, *Ellsberg v. Mitchell*, 709 F.2d 51, 58 (D.C. Cir.1983) and *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007), both require the Court to probe carefully and with a skeptical eye the Government's assertion of privilege. *Ellsberg*, 709 F.2d at 58 ("it is essential that the courts continue critically to examine instances of [state secrets] invocation."); *Al-Haramain*, 507 F.3d 1190 at 1203 ("We take very seriously our obligation to review the [government's claims] with a very careful, indeed skeptical, eye and not to accept at face value the government's claim or justification of privilege.") Applying that standard, Secretary Esper has failed entirely to demonstrate that disclosing the group or sect responsible for these attacks and Iran's involvement in them poses a "reasonable danger" of compromising national security as required by *U.S. v Reynolds*. *See* 345 U.S. 1, 7–10 (1953).

As discussed above, Secretary Esper has only asserted state secret privilege concerning five categories of sources and methods information that Plaintiffs have repeatedly informed the

4

Government they are not seeking. Even if the Secretary wished to invoke privilege over the knowledge that a hostile foreign power, Iran, or its proxies were responsible for specific EFP attacks against U.S. forces in Iraq, there would be no reasonable basis to do so. The Government has already produced a document attributing one of the three attacks at issue to Iran and its proxies. Secretary Esper has not explained why this critical information regarding the Hochstetler attack was disclosed to Plaintiffs without jeopardizing national security, while the very same type of information regarding the Burks and Tiffner attacks cannot be disclosed without jeopardizing national security. *See* Oates Reply Decl. at ¶¶ 12-13. Moreover, in a published opinion, this Court has already found Iran liable for specific EFP terrorist attacks on other servicemen. Mot at 2 (citing *Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12, 57 (D.D.C. 2019)). Finally, Iran's role in the death of hundreds of U.S. service members in Iraq is a matter of public knowledge thanks in large part to official statements by the U.S. military.[1]

Among other wholesale redactions, Secretary Esper has provided no basis for the Government's redaction of the *entire* section entitled "Sect Responsible" from the SIGACT report pertaining to the November 14, 2007 attack that killed Lieutenant Burks, and the entire section entitled "Conclusions" from the Post-Blast EOD report pertaining to the November 7, 2007 attack that killed Captain Tiffner. *See* Oates Reply Decl. at ¶¶ 10-11; Oates Decl. of Jan. 21, 2020 at ¶¶31, 31, ECF No. 43-2. Under the law of this Circuit, DOD is obligated to carefully excise properly classified information dangerous to national security from non-exempt portions of the subpoenaed documents. *See Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993); *Ellsberg*, 709 F.2d

---

[1] *See* e.g. *Iran killed more US troops in Iraq than previously known, Pentagon says,* Military Times, Apr. 4, 2019, https://www.militarytimes.com/news/your-military/2019/04/04/iran-killed-more-us-troops-in-iraq-than-previously-known-pentagon-says/; THE U.S. ARMY IN THE IRAQ WAR VOL 2., THE CHIEF OF STAFF OF THE ARMY'S OPERATION IRAQI FREEDOM STUDY GROUP 2013-2018 at 65-68, 72-73, 639, https://publications.armywarcollege.edu/pubs/3668.pdf ("In terms of geostrategic consequences, the war produced profound consequences. At the time of this project's completion in 2018, an emboldened and expansionist Iran appears to be the only victor.") (describing in detail Iranian support for Shi'a EFP networks in Iraq).

at 57 (requiring the Government to "disentangl[e]" sensitive information from non-sensitive information."). DOD does not assert that its dozens of fully redacted pages consist entirely of source names, information gathering techniques, vehicle schematics, and the like (i.e. those materials over which Secretary Esper has asserted privilege). Nor does DOD assert that it would be impossible to reduce those sections to only information that merely attributes responsibility to a particular group, sect, or to Iran without jeopardizing national security. Oates Reply Decl. at ¶¶ 5-6. It is simply not credible that the sections of those two reports labelled "Sect Responsible" and "Conclusions" contained *only* information properly redacted under *Krikorian. See* 984 F.2d at 466. ("It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."). Indeed, Secretary Esper does not even make that claim. That is presumably because the mere titles of those redacted sections all but compel the conclusion that they contain information regarding the Government's conclusion regarding the sect or group responsible for the deadly EFP attacks in question. Indeed, Plaintiffs' expert Ret. General Oates, who headed the U.S. military organization responsible for the defeat of EFP's, agrees that the redacted materials most likely include attribution of the November 7 and 14, 2007 attacks to Iran or its proxies. Oates Reply Decl. at ¶¶ 8-9. The Government does not dispute that this information is vital to Plaintiff's case. Nor does Secretary Esper provide any basis for withholding that specific information. *Id*. at ¶¶ 10-11.

Accordingly, this Court should order DOD either to produce appropriately redacted documents revealing only the Government's findings of the sect, group or nation responsible for the deadly EFP attacks on Plaintiffs, or compel the Government to adopt one of the many compromise solutions proposed by Plaintiffs, any of which would protect national security while giving Plaintiffs the very limited information they need to prosecute their claims against Iran. Alternatively, if the Court has any doubt that the Government has failed to carry its burden to demonstrate secrecy here,

the Court should examine un-redacted versions of the relevant documents *in camera*. That approach is endorsed by two of the cases the Government cites to in its opposition. *See El-Masri v. United States*, 479 F. 3d 296, 305 (4th Cir. 2007) (*in camera* inspection may be warranted to determine if government has sustained its burden of establishing the state secrets privilege especially where there is a strong showing of necessity); *Halkin v. Helms*, 598 F.2d 1, *10 (D.C. Cir. 1978) ("It is settled that in camera proceedings are an appropriate means to resolve disputed issues of privilege.") Based on Ret. General Oates assessment, Plaintiffs are confident that such an *in camera* review will further demonstrate that the attribution information Plaintiffs seek may be disclosed without jeopardizing national security.

**II.    DTRA's Search for Responsive Records Was Inadequate.**

In the 11 months since the government released its first batch of heavily-redacted documents, the declaration of Intelligence Specialist Alexander Edwards is the first instance in which the Government has provided any of the Boolean search terms and strings which the DOD used to define the scope of responsive documents. Those search terms are inadequate on their face. For example, they do not include the term "Iran," or the names of any known Iranian proxy groups. *See* Edwards Decl. of April 24, 2020 at ¶17, ECF No,.45-1. As a result, in formulating the search strings, Intelligence Specialist Edward inexplicably ***excluded*** any document that mentioned Iran but not the IRGC, even if that document included references to EFPs, the date of one of the three specified attacks on Plaintiffs, and the precise grid coordinates of any of those attacks. *Id.* Likewise, those search strings also excluded any documents that listed commonly known Iranian proxy groups, such as the Badr Corps, that did not also include the term IRGC. The search strings also excluded any document that did not include the precise grid coordinates supplied by Plaintiffs in their subpoena, even if that document included all other search criteria. *Id.* Additionally, the search strings did not include the names of any of the victims of the EFP attacks on Plaintiffs. *Id*. Plaintiffs could have

corrected any of these errors if they had been offered a chance to submit, or even review, search strings.

Plaintiffs point out these glaring deficiencies in the Government's search to further demonstrate the Government's lack of diligence in responding to Plaintiffs' subpoena. This Court, however, need not reach a decision on the inadequacy of the Government's search for responsive documents if it orders the Government to disclose the information regarding the group, sect and/or nation responsible for the EFP attacks on Plaintiffs Burks and Tiffner as outlined in Section I above. Disclosure of that very limited information will suffice to provide Plaintiffs with the critical information they need to prosecute their case against Iran without jeopardizing national security and without requiring the Government to devote further resources to respond to Plaintiffs' subpoena.

## CONCLUSION

Neither reflexive secretiveness, generalized antipathy to civil litigation, nor unwillingness to expend resources on the precise redactions required authorize DOD to disregard an otherwise valid subpoena. Because the Government has not even attempted to justify its withholding of the specific attribution information sought by Plaintiffs, Plaintiffs' Motion to Compel should be granted and the Court should order the Government to produce selectively redacted documents disclosing the requested information or to provide testimony or an unclassified summary regarding the same in lieu of production.

Respectfully Submitted,

Dated: May 29, 2020

/s/ Steven R. Perles
Steven R. Perles (D.C. Bar No. 326975)
Edward B. MacAllister (D.C. Bar No. 494558)
Joshua K Perles (D.C. Bar No. 1031069)
PERLES LAW FIRM, PC
1050 Connecticut Ave., NW
Suite 500
Washington, DC 20036

Tel: (202) 955-9055

James P. Bonner
Patrick L. Rocco
FLEISCHMAN BONNER & ROCCO LLP
447 Springfield Avenue, 2nd Fl.
Summit, NJ 07901
Tel: (908) 516-2045

*Attorneys for Plaintiff*