**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ALAN BURKS**, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>**ISLAMIC REPUBLIC OF IRAN**, *et al.*,<br><br>    Defendants. | Case No. 16-cv-1102 (CRC) |

**MEMORANDUM OPINION**

Plaintiffs are three U.S. servicemen (and their families and estates) who were either killed or injured in terrorist attacks in Iraq involving explosive devices known as explosively formed penetrators ("EFPs").[1]  Together they sued Defendants Islamic Republic of Iran and the Iranian Revolutionary Guard Corps (collectively, "Iran"), alleging that Iran supplied the EFPs used in the attacks.  After Iran failed to appear, the Court granted Plaintiffs' motion for default judgment as to liability and appointed a special master to file a report and recommendations on the issue of compensatory damages.  See Burks v. Islamic Republic of Iran, No. 16-cv-1102 (CRC), 2025 WL 637368 (D.D.C. Feb. 27, 2025).  The special master has since made factual findings and recommended damages awards for each of the remaining eighteen plaintiffs.  Plaintiffs do not object to the special master's recommendations, and they now move for adoption of the special master's report in whole.  For the reasons explained below, the Court will adopt the special masters' recommendations as to damages in part and enter final default judgment for Plaintiffs.

---

[1] A fourth serviceman, Randolph Delbert Nantz, was dismissed from the case because the Court lacked jurisdiction over his claims.  See Order (ECF No. 76) at 1.

## I.    Background

The Court assumes familiarity with its prior opinion recounting the factual and procedural background of this case.  See Burks v. Islamic Republic of Iran, No. 16-cv-1102 (CRC), 2022 WL 20588923, at *1–4 (D.D.C. Sept. 30, 2022).  To summarize, EFPs are a "particularly lethal type of improvised explosive device . . . deployed against U.S. military forces in Iraq during the United States' military operations there."  Id. at *1.  The device "project[s] a hypersonic slug of copper" that is "capable of penetrating the exterior armor of U.S. military vehicles" and "wreak[ing] havoc on the interior of vehicles, frequently dismembering and killing [the vehicle's] occupants."  Id. (third alteration in original) (citations omitted).  The production of EFPs requires "precision manufacturing" beyond the capabilities of terrorist groups operating in Iraq at the time, and an investigation by U.S. military and civilian task forces "trace[d] the machinery used to manufacture EFPs to Iran."  Id. at *2.  Accordingly, several courts in this district have concluded that Iran "provided material support for virtually all EFP attacks that occurred in Iraq between 2005 and 2011."  Id. at *7.

The three servicemen in this case—Second Lieutenant Peter Burks, Captain Benjamin Tiffner, and Captain James David Hochstetler—were victims of Iran-sponsored EFP attacks.[2] On November 14, 2007, Lieutenant Burks was killed during an EFP attack on his military convey as it entered the Green Zone in Baghdad, Iraq.  Id. at *4.  On November 7, 2007, Captain Tiffner was killed during an EFP attack on another ground convoy in Baghdad.  Id. at *3.  And on August 23, 2007, Captain Hochstetler's convoy was attacked by multiple remote-detonated

---

[2] Captain Hochstetler is now a retired Major in the U.S. Army Special Forces.  See Burks, 2022 WL 20588923, at *3.

EFPs.  Id.  The attack killed two soldiers and left Captain Hochstetler with severe injuries, including a traumatic brain injury.  Id.

Plaintiffs include the estates of Lieutenant Burks and Captain Tiffner, Captain Hochstetler, and several of their immediate family members.  See Compl. ¶¶ 4–21.  They allege that the three servicemen were victims of international terrorism and extrajudicial killings carried out with the material support of Iran.  See id. ¶¶ 57–64 (citing 28 U.S.C. § 1605A(c)).  After Iran failed to appear, the Court granted default judgment as to liability.  Burks, 2025 WL 637368, at *4.  The Court also appointed Ms. Deborah Greenspan as a special master and requested that she prepare a report and recommendation regarding the appropriate amount of compensatory damages for each plaintiff.  See Order (ECF No. 71) at 1.  Relying on declarations, economic loss reports, and other evidence provided by Plaintiffs, the special master prepared a comprehensive report with several recommendations.  See R. & R. of the Special Master Regarding Compensatory Damages ("R. & R.") at 1–2.  Plaintiffs have no objections to the special master's report and move for adoption of the recommended damages awards in full.  See Pl.'s Mot. for Adoption of the Special Master's Recommended Damages Award and for Entry of Default J. ("Pl.'s Mot.") at 3.

## II.    Analysis

After reviewing the special master's well-substantiated report, the Court adopts almost all of its recommended damages awards.

### A.  Compensatory Damages

The Foreign Sovereign Immunities Act ("FSIA") provides for three forms of compensatory damages.  See 28 U.S.C. § 1605A(c).  First, the direct victims of Iran-backed EFP attacks may recover economic damages, such as lost future earnings.  See Roth v. Islamic

Republic of Iran, 78 F. Supp. 3d 379, 401–02 (D.D.C. 2015).  Second, direct victims may recover damages for their pain and suffering during and after the attacks.  See Wultz v. Islamic Republic of Iran, 864 F. Supp. 2d 24, 37 (D.D.C. 2012).  Third, the immediate family members of direct victims may recover solatium for their emotional injuries stemming from the attacks.  Id.  Plaintiffs "must prove the amount of the damages by a 'reasonable estimate' consistent with th[e] [D.C. Circuit's] application of the American rule on damages."  Hill v. Republic of Iraq, 328 F.3d 680, 681 (D.C. Cir. 2003).  "In determining the 'reasonable estimate,' courts may look to expert testimony and prior awards for comparable injury."  Braun v. Islamic Republic of Iran, 228 F. Supp. 3d 64, 82 (D.D.C. 2017).

### 1. Economic Damages

The FSIA expressly provides that "foreign state-sponsors of terrorism are liable to victims for economic losses stemming from injuries or death sustained as a result of the foreign state's conduct."  Thuneibat v. Syrian Arab Republic, 167 F. Supp. 3d 22, 48 (D.D.C. 2016) (citing 28 U.S.C. § 1605A(c)).  Economic damages "typically include lost wages, benefits and retirement pay, and other out-of-pocket expenses."  Owens v. Republic of Sudan, 71 F. Supp. 3d 252, 258 (D.D.C. 2014).  "Such damages may be proven by the submission of a forensic economist's expert report."  Roth, 78 F. Supp. 3d at 402 (citing Belkin v. Islamic Republic of Iran, 667 F. Supp. 2d 8, 24 (D.D.C. 2009)).

In this case, the special master has recommended economic damages awards for the three direct victims based on expert reports of their lost future earnings.  For Lieutenant Burks, the Court agrees with the special master's thorough analysis and adopts her factual findings and recommendations in full.  See R. & R. at 26–30.  The Court also agrees with the special master's revised calculation of Captain Hochstetler's economic damages, as her assumptions—which are

4

more conservative than the expert's assumptions—better reflect his post-military career path and earnings offsets. See id. at 35–39. Accordingly, the Court awards economic loss damages of $10,292,872 to the Estate of Peter Burks and $9,072,791 to James Hochstetler.

However, the Court will reduce the special master's recommended economic damages award for Captain Tiffner. When calculating Captain Tiffner's lost future earnings, Plaintiffs' expert assumed that would have obtained a Master of Business Administration ("MBA") degree, pursued a career as a management consultant, and "been ranked as a top performing consultant." Id., Ex. 21 at 2–3, 7, 12. While the special master agreed it was "reasonable to assume a post military civilian career in business consulting," R. & R. at 32, she recognized that "different assumptions would [also] be reasonable," id. at 35. She further noted that the expert's calculations "applied the higher end of the bonus and salary range" for management consultants, which at times yielded "very high wages . . . with bonus payments of approximately 100% of base salary." Id. at 33 n.14. But because the special master could not "conclude that the assumptions applied [were] unreasonable," she concurred with the expert's economic loss calculation. Id. at 35.

"In considering an award for lost future earnings, the Court shall take account of the reasonableness and foundation of the assumptions relied upon by the expert." Roth, 78 F. Supp. 3d at 402 (citing Reed v. Islamic Republic of Iran, 845 F. Supp. 2d 204, 214 (D.D.C. 2012)). While "mathematical exactitude is often impossible," the Court must nevertheless ensure that economic loss damages are "established with reasonable certainty and not grounded in speculation, contingency, or conjecture." Bova v. Islamic Republic of Iran, No. 15-cv-1074 (RCL), 2020 WL 2838582, at *11 (D.D.C. May 31, 2020). Indeed, this Court has previously declined to follow a special master's recommendation when the assumptions used in the lost

future earnings calculation were unsupported by the record.  See, e.g., Est. of Fishbeck v. Islamic Republic of Iran, No. 18-cv-2248 (CRC), 2025 WL 2410090, at *12 (D.D.C. Aug. 20, 2025) (rejecting an economic damages award "predicated on the hypothesis" that the victim would have worked as an FBI special agent when there was "no basis" for that assumption).

To be sure, the evidence before the Court indicates Captain Tiffner had an impressive academic background and was an excellent leader during his military service.  See R. & R., Ex. 21 at 4 (noting that Captain Tiffner had a "strong engineering background from West Point"), 12 (acknowledging that he "would have been ranked in the top 3 out of 130 Captains in his year group").  However, the Court does not find much "support" in the record for the expert's assumption that Captain Tiffner—who had a Bachelor of Science in Engineering—would have obtained an MBA after retiring from the military.[3]  R. & R. at 32.  His family members did not indicate what career path he may have pursued.  See Declaration of Timothy & Judith Tiffner (ECF No. 73-3) ¶ 18 (Captain Tiffner's parents explaining that they "don't know" what career he would pursue but "it wouldn't surprise [them] at all to see [him] in the c-suite of a nonprofit, or even a corporation with a service-driven focus"); Declaration of Seth Tiffner (ECF No. 73-11) ¶ 21 (same); Declaration of Joshua Tiffner (ECF No. 73-12) ¶ 22 (same); Declaration of Sarah Crosby (ECF No. 73-13) ¶ 29 (same).  His commanding officer only confirmed that the expert's assumptions were "entirely consistent with [his] expectations of what would have happened." Declaration of Kevin McDonnell (ECF No. 73-20) ¶ 7.  And while "27% of the degrees earned by veterans after using the post 9/11 GI bill" were in business-related majors, R. & R. at 32

---

[3] Curiously, the expert made this assumption "at the directions of counsel."  R. & R., Ex. 21 at 4.

(citation omitted), that statistic does not imply that Captain Tiffner would have obtained a post-graduate business degree.

Nor is there enough evidence that, had Captain Tiffner pursued a career as a management consultant, he would have been ranked a "top perform[er]" earning near the top of the pay range for MBA graduates. Id., Ex. 21 at 12. Based on that assumption, the expert concluded that within ten years of his graduation from business school, Captain Tiffner would have been a senior partner (or equivalent) at a consulting firm earning over $1 million per year in salary and bonuses. Id. at 11 (noting that "senior partners at top firms usually make" over $1 million); id., App. Table 3 (projecting $540,000 in base salary and approximately $795,000 in performance bonuses in 2023). Again, the Court does not doubt that Captain Tiffner was capable of a successful career in consulting. But the conclusion that he would rank among the top wage earners at the upper echelon of that profession strikes the Court as speculative. Moreover, as the special master acknowledges, it is also possible that he would have pursued a career in engineering, where the average starting salary is only 68 percent of the starting salary used in the expert's calculation. See R. & R. at 32 n.12; Est. of Fishbeck, 2025 WL 2410090, at *12 ("The Court cannot accept damage calculations that are based on unsupported assumptions."). In light of these observations, the Court will reduce the special master's recommendation by 25 percent and award economic loss damages of $13,218,995 to the Estate of Benjamin Tiffner.

### 2. *Pain and Suffering*

As to the direct victims' claims for pain and suffering damages, the Court begins by acknowledging what it has said in the past: The process of assessing pain and suffering is an imperfect science, as money alone cannot properly compensate a victim and his family for their

suffering during and after a terrorist attack.  See Goldstein v. Islamic Republic of Iran, 383 F. Supp. 3d 15, 19 (D.D.C. 2019) (Cooper, J.); Cohen v. Islamic Republic of Iran, 268 F. Supp. 3d 19, 24 (D.D.C. 2017) (Cooper, J.).  "In the interest of fairness, however, courts strive to maintain consistency of awards as between the specific plaintiffs and among plaintiffs in comparable situations."  Goldstein, 383 F. Supp. 3d at 19.

### a.  Lieutenant Burks and Captain Tiffner

Lieutenant Burks's estate seeks $1 million in damages based on pain and suffering that he may have experienced after the EFP attack (at approximately 8:00 a.m.) but before his death (at approximately 8:35 a.m.).  Servicemembers who were killed in a terrorist attack in Iraq are not able to recover pain and suffering damages if their death was instantaneous.  See Roth, 78 F. Supp. 3d at 402.  But "[w]hen the victim endured extreme pain and suffering for a period of several hours or less, courts in these cases have rather uniformly awarded $1 million," adjusting upward when the victim's pain is longer and downward when the victim survived for only a few minutes.  Peterson v. Islamic Republic of Iran, 515 F. Supp. 2d 25, 53 (D.D.C. 2007).  The Court may only award damages for pain and suffering if the plaintiff can "prove that the decedent consciously experienced the time between an attack and his or her death."  Roth, 78 F. Supp. 3d at 402.

The special master notes that Lieutenant Burks was given first aid at the site of the EFP attack, but by the time he arrived back at a U.S. military base, there were no signs of life.  R. & R. at 45–46.  The special master further acknowledges that "[t]here is *no statement either way* about whether [Lieutenant] Burks was conscious."  Id. at 46 (emphasis added).  As this Court has previously explained, it "must deny pain and suffering damages where 'the plaintiff is unable to prove that the decedent *consciously* experienced the time between the attack and his or her

death.'" Est. of Fishbeck v. Islamic Republic of Iran, No. 18-cv-2248 (CRC), 2024 WL 4119382, at *3 (D.D.C. Sept. 9, 2024) (quoting Roth, 78 F. Supp. 3d at 402). So while Lieutenant Burks's injuries "did not cause instantaneous death," there is no evidence before the Court that he was conscious after the EFP detonated. Id.; see R. & R. at 46 (acknowledging a lack of "*affirmative* proof . . . of conscious pain and suffering"). Accordingly, his estate cannot recover damages for pain and suffering.

Similarly, the Court agrees with the special master's recommendation that Captain Tiffner's estate is not entitled to pain and suffering damages, as his autopsy report indicates that he "died rapidly." R. & R. at 47.

b. Captain Hochstetler

Captain Hochstetler also seeks damages for the pain and suffering that he experienced in both the immediate aftermath and years following the EFP attack on his convoy. Courts in this district typically "begin[] with the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory damages [for pain and suffering]." Wultz, 864 F. Supp. 2d at 37–38 (citing Peterson, 515 F. Supp. 2d at 54); see also Est. of Fishbeck, 2024 WL 4119382, at *8. As it has done in prior cases, the Court will apply the Wamai framework, which awards damages based on six general categories of physical injuries ranging in severity and reserves the $5 million baseline for individuals with "severe physical injuries." Wamai v. Republic of Sudan, 60 F. Supp. 3d 84, 91–93 (D.D.C. 2014) (subsequent history omitted).[4] Under "Category 5" of the Wamai framework, the Court awards the $5

---

[4] At least two courts in this district have endorsed a modified damages framework that provides additional pain and suffering damages based on the aggravating circumstances of EFP attacks. See Lee v. Islamic Republic of Iran, No. 19-cv-830 (APM), 2023 WL 7458370, at *2 (D.D.C. Oct. 16, 2023); Stearns v. Islamic Republic of Iran, No. 17-cv-131 (RCL), 2025 WL

million baseline to plaintiffs who suffer "some mix of serious hearing or vision impairment, many broken bones, severe shrapnel wounds or burns, lengthy hospital stays, serious spinal or head trauma, and permanent injuries." Id. at 92–93.  The Court has previously found that plaintiffs fall into this category when they experienced (1) a traumatic brain injury, tinnitus, and severe shrapnel injuries, see Est. of Fishbeck, 2024 WL 4119382, at *11; (2) a lengthy hospital stay due to multiple internal lacerations, see Est. of El Halabi v. Islamic Republic of Iran, No. 22-cv-3190 (CRC), 2025 WL 3120468, at *4 (D.D.C. Nov. 7, 2025); or (3) a traumatic brain injury, post-traumatic stress disorder, hearing loss, and numerous shrapnel wounds with ongoing effects, Est. of Fishbeck, 2025 WL 2410090, at *16.

The special master proposes a $5.75 million damages award to Captain Hochstetler—a fifteen percent increase over the $5 million baseline—because he "sustained serious [physical] injuries" and "suffers from permanent and painful disabling physiological injuries that have impaired his personal relationships and caused and will continue to cause cognitive limitations." R. & R. at 47–48.  Specifically, the EFP explosion caused Captain Hochstetler to suffer severe burns, eye injuries, and a near-total amputation of his nose.  Id., Ex. 4 at 2.  His right hand was also injured by the explosive shrapnel and blast forces.  Id.  After undergoing multiple reconstructive surgeries, Captain Hochstetler experienced severe headaches and tinnitus, lost his sense of smell, and cannot fully experience joy or gratification.  Id. at 4–7.  MRI scans further revealed that he had two brain lesions consistent with traumatic contusions.  Id. at 2.  Based on Captain Hochstetler's imaging, cognitive deficits, psychological problems, and neurobehavioral conditions after the attack, a neurologist diagnosed him with a traumatic brain injury.  Id. at 9–

---

1233915, at *2 (D.D.C. Apr. 29, 2025).  However, neither the special master nor Plaintiffs ask the Court to apply the modified framework in this case.

11.  Captain Hochstetler describes this injury as having "ruined [his] life," and he fears that it may "overtake[] [him] completely."  Declaration of James Hochstetler (ECF No. 73-4) ¶ 16.[5]

While Captain Hochstetler has undoubtedly endured extreme pain and suffering, the Court does not find a sufficient basis to depart upward from the $5 million baseline award. Many of his injuries are typical among "Category 5" plaintiffs, including a traumatic brain injury, head trauma, sensory loss, nerve damage, tinnitus, and severe emotional damage.  See, e.g., Wamai, 60 F. Supp. 3d at 93; Est. of Fishbeck, 2024 WL 4119382, at *11; Est. of Fishbeck, 2025 WL 2410090, at *16.  The special master's report acknowledged that his injuries were comparable to prior plaintiffs in "Category 5," and its sole justification for an upward departure is the fact that it is "not clear" whether the prior plaintiffs "suffered the level of cognitive deficit" experienced by Captain Hochstetler.  R. & R. at 48.  But in the absence of specific evidence warranting an upward departure, the Court must "ensure that individuals with similar injuries receive similar awards."  Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 84 (D.D.C. 2010) (quoting Peterson, 515 F. Supp. 2d at 54).  Accordingly, the Court awards $5 million in pain and suffering damages to Captain Hochstetler.

---

[5] Notwithstanding his severe injuries, Captain Hochstetler insisted on redeploying. See Declaration of James Hochstetler (ECF No. 73-4) ¶ 21; R. & R., Ex. 4 at 4 (acknowledging that Captain Hochstetler "maintained active duty status and opted to return to Iraq to continue with the mission he had been assigned originally"); Declaration of Leanne Renfroe (ECF No 73-14) ¶ 20 (noting that Captain Hochstetler was "back in Iraq within six months" after the attack).  The evidence presented to the Court confirms the severity of Captain Hochstetler's physical and psychological injuries, including his traumatic brain injury.  But the Court does question why the Army would allow Captain Hochstetler to return to an active war zone only six months after the EFP attack.  See Donna Miles, Severely Wounded Troops Find Meaningful Ways to Continue Serving, U.S. Army (July 13, 2007), https://perma.cc/W4NF-922H (explaining that wounded soldiers may remain on active duty while "pursu[ing] a variety of different paths").

3. *Solatium*

Finally, the immediate family members of the three servicemen seek solatium damages. "Solatium damages, like damages for pain and suffering, are by their very nature unquantifiable." Moradi v. Islamic Republic of Iran, 77 F. Supp. 3d 57, 72–73 (D.D.C. 2015). They are intended to compensate family members "for the mental anguish, bereavement and grief that those with a close personal relationship to a [victim] experience." Belkin v. Islamic Republic of Iran, 667 F. Supp. 2d 8, 22 (D.D.C. 2009). "Courts may presume that those in direct lineal relationships with victims of terrorism suffer compensable mental anguish." Roth, 78 F. Supp. 3d at 403; see Kaplan v. Hezbollah, 213 F. Supp. 3d 27, 38 (D.D.C. 2016). Solatium damages are available to a victim's "immediate family members," including their spouse, parents, siblings, and children. Estate of Heiser v. Islamic Republic of Iran, 659 F. Supp. 2d 20, 28 (D.D.C. 2009); Kaplan, 213 F. Supp. 3d at 38. An immediate family member who provides credible testimony about the attack's effect on him or her is eligible for an award of solatium damages, provided that their relationship with the victim is sufficiently close. See Moradi, 77 F. Supp. 3d at 72–73.

a. Family Members of Lieutenant Burks and Captain Tiffner

Six members Lieutenant Burks's and five members of Captain Tiffner's families seek solatium damages for the loss of their son or brother. "For relatives of victims killed by terrorist attacks, courts begin with 'a framework in which spouses of deceased victims were awarded approximately $8 million, while parents received $5 million and siblings received $2.5 million.'" Bathiard v. Islamic Republic of Iran, No. 16-cv-1549 (CRC), 2020 WL 1975672, at *5 (D.D.C. Apr. 24, 2020) (quoting Anderson v. Islamic Republic of Iran, 839 F. Supp. 2d 263, 266 (D.D.C. 2012)). While "[c]ourts in this district have differed somewhat on the proper amount awarded to

12

children of victims," Wamai, 60 F. Supp. at 94 (comparing cases), the Court adopts the same baseline for children and parents, see Bathiard, 2020 WL 1975672, at *5; see also Mwila v. Islamic Republic of Iran, 33 F. Supp. 3d 36, 45 (D.D.C. 2014) ("[C]hildren who lose parents are likely to suffer as much as parents who lose children."). In applying this framework, the Court acknowledges that "[t]hese numbers . . . are not set in stone, and that upward deviations may be warranted in the face of evidence establishing an especially close relationship between the plaintiff and decedent . . . or with medical proof of severe pain, grief or suffering on behalf of the claimant[.]" Stearns v. Islamic Republic of Iran, No. 17-cv-131 (RCL), 2023 WL 4999215, at *3 (D.D.C. Aug. 4, 2023) (first and second alterations in original) (citations and internal quotation marks omitted).

The special master recommends the "full baseline awards" for Lieutenant Burks and Captain Tiffner's parents and siblings, with three exceptions. See R. & R. at 53–54. First, the special master recommends a ten percent enhancement over the baseline for Sarah Phillips, Lieutenant Burks's sister, because "the shock of the loss of her brother two weeks after she gave birth caused her to lose milk production." Id. at 53; see Declaration of Sarah Phillips (ECF No. 73-8) ¶¶ 26–28. Second, the special master recommends a five percent enhancement over the baseline for Georgia Burks, Lieutenant Burks's sister, because she has "experienced psychological injuries requiring treatment" since childhood, including PTSD, anxiety, and panic depression disorder. R. & R. at 53; see Declaration of Georgia Burks (ECF No. 73-10) ¶¶ 23, 28. Third, the special master recommends a five percent enhancement over the baseline for Joshua Tiffner, Captain Tiffner's brother, because "his grief over the loss of his brother contributed to the break up of his marriage and has stifled his ability to form personal relationships." R. & R. at 54; see Declaration of Joshua Tiffner (ECF No. 73-12) ¶ 21.

13

The Court adopts the special master's factual findings and agrees with almost all of the recommended damages awards.  Each family member has provided a sworn declaration establishing their relationship with Lieutenant Burks or Captain Tiffner and describing the devastating effects of their loss.  Because they had a sufficiently close relationship to the servicemen, they are entitled to at least the baseline damages award.  See Moradi, 77 F. Supp. 3d at 72–73.  Moreover, the special master's proposed enhancements for Sarah Phillips and Georgia Burks are comparable to other enhancements for family members who suffered similar physical or psychological injuries.  See, e.g., Goldstein, 383 F. Supp. 3d at 23 (awarding a 20 percent enhancement to a family member who gave premature birth two days after the attack); Bernhardt v. Islamic Republic of Iran, No. 18-cv-2739 (TJK), 2023 WL 2598677, at *16 (D.D.C. Mar. 22, 2023) (awarding a 25 percent enhancement to a family member whose "childhood development and young adulthood [was] significantly harmed by [the victim's] death").  The Court will therefore award $2.75 million to Sarah Phillips and $2.625 million to Georgia Burks.  However, the Court concludes that Joshua Tiffner is not entitled to an enhanced damages award.  While he certainly suffered a tremendous personal loss, there is no evidence that he was hospitalized, experienced nervous breakdowns, engaged in self-destructive behavior, or endured other hardships that have justified enhanced damages awards.  See Est. of Fishbeck, 2025 WL 2410090, at *9.  Accordingly, the Court awards the baseline $2.5 million in solatium damages to Joshua Tiffner.

> b.  Family Members of Captain Hochstetler

Captain Hochstetler's four family members are also eligible for solatium damages.  "For relatives of victims physically *injured* by terrorist attacks, courts have applied a framework whereby awards are valued at half of the awards to family members of the *deceased*—$4 million,

$2.5 million and $1.25 million to spouses, parents, and siblings, respectively." Goldstein, 383 F. Supp. 3d at 21–22 (quoting Kaplan, 213 F. Supp. 3d at 38). Courts have also adopted a $2.5 million baseline award for children of injured victims. See Wamai, 60 F. Supp. 3d at 95. While solatium awards may be adjusted up or down based on the circumstances, "solatium awards for relatives of victims should be proportionate to the pain-and-suffering awards to the victims themselves." Goldstein, 383 F. Supp. 3d at 22 (citing Cohen, 268 F. Supp. 3d at 26).

The special master recommends (1) a fifteen percent enhancement to the baseline damages award for Leanne Renfroe, Captain Hochstetler's wife at the time of the attack; (2) the baseline damages award for Kyle Marshall, Captain Hochstetler's adopted son; (3) the baseline damages award for James Hochstetler II, Captain Hochstetler's son; and (4) a 40 percent reduction to the baseline damages award for P.H., Captain Hochstetler's minor daughter who was not born until after the attack. Here too, the Court adopts the special master's factual findings in full, but only some of the recommended damages awards.

First, the Court agrees that Kyle Marshall and James Hochstetler II are entitled to the baseline damages award. Plaintiffs have provided sufficient evidence that while Kyle Marshall is adopted, he "is the equivalent of a biological child." R. & R. at 55; Declaration of Kyle Marshall (ECF No. 73-15) ¶¶ 4–5 (noting that Captain Hochstetler became his father when he "was around 4 years old" and they "lived together in the same household until [he] left for college"). Because he is the "functional equivalent" of an immediate family member, he may recover solatium damages as if he were Captain Hochstetler's biological son. See Kinyua v. Republic of Sudan, 466 F. Supp. 3d 1, 9–10 (D.D.C. 2020) (concluding that an adopted son is the "functional equivalent[]" of an immediate family member).

Second, the Court concludes that Leanne Renfroe—like Joshua Tiffner—is only entitled to the baseline damages award due to a lack of special circumstances justifying an enhancement. The special master proposed a fifteen percent enhancement because her "marriage and family broke up" as a result of Captain Hochstetler's "cognitive issues" after the attack. R. & R. at 55. However, that alone does not warrant an enhancement above the baseline damages award. See Spencer v. Islamic Republic of Iran, 71 F. Supp. 3d 23, 29 (D.D.C. 2014) (awarding the baseline damages award to a victim's former spouse even though "at least one witness attributed the dissolution of their marriage to the after effects of the attack"); Ackley v. Islamic Republic of Iran, No. 20-cv-621 (BAH), 2022 WL 3354720, at *57 (D.D.C. Aug. 12, 2022) (same). Accordingly, the Court awards $4 million in solatium damages to Leanne Renfroe.

Third, the Court finds that P.H. cannot recover solatium damages. P.H. was born in 2011, about four years after Captain Hochstetler was injured during the EFP attack. Declaration of Leanne Renfroe on Behalf of P.H. (ECF No. 73-17) ¶ 2. Several courts in this district have concluded that family members born *after* the attack at issue are not entitled to solatium damages. See Wamai, 60 F. Supp. 3d at 96 (holding that "plaintiffs not alive at the time of the [terrorist attacks] cannot recover solatium damages"); Davis v. Islamic Republic of Iran, 882 F. Supp. 2d 7, 15 (D.D.C. 2012) ("[A] plaintiff bringing an action under [28 U.S.C.] § 1605A must have been alive at the time of the attack in order to collect solatium damages."). Nor are there "special circumstances" present here that would warrant a departure from this rule. See, e.g., Goldstein, 383 F. Supp. 3d at 22–23 (awarding solatium damages to a victim's child who was prematurely born only *two days* after the attack). The Court therefore dismisses P.H.'s claim for solatium damages.

* * *

16

To summarize, the Court awards the following compensatory damages to the three direct victims of the EFP attacks and their immediate family members:

| Plaintiff | Economic | Pain & Suffering | Solatium |
|---|---|---|---|
| Estate of Peter Burks | $10,292,872 | $0 | |
| Alan Burks | | | $5,000,000 |
| Jackie Hlastan | | | $5,000,000 |
| Georgia Burks | | | $2,625,000 |
| Alison Burks McRuiz | | | $2,500,000 |
| Sarah Phillips | | | $2,750,000 |
| Zachary Burks | | | $2,500,000 |
| Estate of Benjamin Tiffner | $13,218,995 | $0 | |
| Timothy Tiffner | | | $5,000,000 |
| Judith Tiffner | | | $5,000,000 |
| Joshua Tiffner | | | $2,500,000 |
| Seth Tiffner | | | $2,500,000 |
| Sarah Crosby | | | $2,500,000 |
| James Hochstetler | $9,072,791 | $5,000,000 | |
| Leanne Renfroe | | | $4,000,000 |
| James Hochstetler II | | | $2,500,000 |
| Kyle Marshall | | | $2,500,000 |
| **TOTAL** | **$32,584,658** | **$5,000,000** | **$46,875,000** |

B.  Punitive Damages

While the Court appointed the special master to file a report and recommendation regarding compensatory damages, it will assess punitive damages in the first instance. See Order (ECF No. 71) at 2.  Plaintiffs ask the Court to award "punitive damages equal to two times compensatory damages."  Pl.'s Mot. at 2.  The Court declines to do so.

The FSIA authorizes punitive damages to be assessed against foreign state sponsors of terrorism.  28 U.S.C. § 1605A(c); see Karcher v. Islamic Republic of Iran, No. 16-cv-232 (CKK), 2025 WL 561261, at *2 (D.D.C. Feb. 20, 2025) ("[P]unitive damages are warranted where defendants supported, protected, harbored, aided, abetted, enabled, sponsored, conspired with, and subsidized a known terrorist organization whose modus operandi included the targeting, brutalization, and murder of American citizens and others." (citation and internal

17

quotation marks omitted)).  To calculate a punitive damages award, courts consider "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants."  Cohen, 268 F. Supp. 3d at 27 (quoting Wamai, 60 F. Supp. 3d at 96–97).  This Court has previously "conclude[d] that a multiple of two is appropriate" when the defendants "did not directly carry out the attack, but funded" the organization that did.  Id. at 28 (citation omitted); see also Est. of Fishbeck, 2024 WL 4119382, at *13.  Indeed, at least one court in this district has awarded punitive damages equal to three times compensatory damages in a case involving EFP attacks.  See Stearns, 2023 WL 4999215, at *4–5.

However, the Court recently explained why it now generally declines to award punitive damages against Iran.  See Est. of Fishbeck, 2025 WL 2410090, at *22–24.  In short, punitive damages "would be highly unlikely to deter the Iranian government and its proxies from engaging in similar conduct."  Id. at *23.  Courts have already awarded billions of dollars in punitive damages against Iran, and the marginal benefit of additional punitive damages is now greatly diminished.  To be sure, "[t]he need for punitives might still arise in cases involving more targeted acts of terrorism by Iran."  Id. at *24.  But the claims in this case "arise out of foreign policy and military decisions made by both the United States and Iran," and Plaintiffs' "compensatory awards relative to those of plaintiffs who have already received damages judgments against Iran" will remain unchanged.  Id. (citing 34 U.S.C. § 20144(c)(2)).  Accordingly, the Court declines to award punitive damages.

Notwithstanding this ruling, the Court reiterates that Iran's conduct is reprehensible.  The deaths of Lieutenant Burks and Captain Tiffner are nothing short of tragic, and Captain Hochstetler will continue to live with the physical and psychological injuries caused by Iran's

18

material support of terrorist groups.  No damages award—compensatory, punitive, or otherwise—will fully alleviate the harm done to these servicemen or their families.

    C.  <u>Pre-Judgment Interest</u>

The Court maintains its belief that pre-judgment interest "is not appropriate for nonpecuniary damages already designed to provide complete compensation."  <u>Goldstein</u>, 383 F. Supp. 3d at 24.  Though the Court will not award pre-judgment interest, it will award post-judgment interest as specified by the federal post-judgment interest statute.  <u>See</u> 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

## III.  Conclusion

For the foregoing reasons, the Court will grant in part and deny in part [75] Plaintiffs' Motion for Adoption of the Special Master's Recommended Damages Awards and for Entry of Default Judgment.  A separate Order shall accompany this memorandum opinion.

 

CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>March 9, 2026</u>